# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| PAULANDREA DE LEON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| KBR, INC. AND SERVICES EMPLOYEES INTERNATIONAL, INC., | ) ) ) |
| Defendants. | ) ) ) |

Civ. No. 11-00685 ACK-BMK

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND TRANSFERRING THE CASE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

For the following reasons, the Court: (1) DENIES Defendants' Motion to Dismiss on the basis of lack of personal jurisdiction; (2) DENIES Defendants' alternative Motion to Dismiss on the basis of improper venue; and (3) TRANSFERS this matter to the United States District Court for the Southern District of Texas, Houston Division.

# I.  PROCEDURAL BACKGROUND

This case arises out of Plaintiff's allegation that she was subjected to disparate treatment during her employment with Defendants.  Plaintiff filed a complaint on November 9, 2011 (Doc. No. 1, the "Complaint") against defendants KBR, Inc. ("KBR") and Services Employees International, Inc. ("SEII") (together, the "Defendants").  In her Complaint, Plaintiff asserts the following causes of action: (I) violation of federal discrimination laws; (II) hostile work environment; (III) infliction of emotional distress; (IV) retaliation; (V) defamation; (VI) invasion of privacy; (VII) whistleblower's protection act; and (VIII) unlawful imprisonment.  (Compl. ¶¶ 21-38.)  Plaintiff seeks the following recovery:  reinstatement to her employment with Defendants; all damages, including general damages for discrimination, wrongful termination, personal injury, and defamation; special damages, including back pay, front pay, and other expenses; and costs of litigation, reasonable attorney fees, and other costs and interests, including prejudgment interest.  (Compl. at 16.)

On February 7, 2012, Plaintiff filed a Notice of Mailing to Defendant KBR at its last known address, which is listed as 601 Jefferson Street, Houston, Texas, 77002.  (<u>See</u> Doc. No. 5.)

On February 17, 2012, Defendants filed a Motion To

Dismiss For Lack Of Personal Jurisdiction, Or, Alternatively, For Improper Venue, Or Alternatively To Transfer Venue. (Doc. No. 6, hereinafter the "Motion to Dismiss.")  In support of their Motion to Dismiss, Defendants submitted three declarations from Justin Mueller (Doc. No. 6-4), Mary Lamance (Doc. No. 6-5), and Paul Watson (Doc. No. 6-6).

Plaintiff filed a memorandum in opposition to the Motion to Dismiss on April 18, 2012. (Doc. No. 18, hereinafter "P's Opp. Mem.")[1]  Plaintiff also submitted a declaration by Paulandrea De Leon in support of the opposition memorandum. (Doc. No. 18-1.)  Plaintiff subsequently filed a First Errata to her opposition memorandum. (Doc. No. 21, hereinafter "P's Errata.")  Defendants responded with a Reply Brief in support of their Motion to Dismiss on April 23, 2012.  (Doc. No. 20, hereinafter "D's Reply.")

The Court held a hearing on Defendants' Motion to Dismiss on Monday, May 7, 2012, and addresses the motion herein.

---

[1] Defendants correctly observe that Plaintiff's opposition memorandum was untimely and in violation of Local Rule 7.4, which provides that "[a]n opposition to a motion set for hearing shall be served and filed not less than twenty-one (21) days prior to the date of hearing."  Plaintiff filed her opposition memorandum on April 18, 2012, two days after the deadline.  (See L.R. 7.4, P's Opp. Mem.)

## II. FACTUAL BACKGROUND[2/]

This action arises out of Plaintiff's employment with Defendants as a Mechanical Assembler in Iraq, where Plaintiff contends that she was subjected to disparate treatment and ultimately terminated. (Compl. ¶¶ 8, 20(a), 20(m).) Plaintiff is a Filipino female. Id. ¶ 7. Plaintiff is and was at all relevant times a resident of Honolulu, Hawaii. Id. ¶ 1.

Defendant KBR is a foreign corporation incorporated in Delaware with its principal place of business in Houston, Texas. Id. ¶ 2; see also Mueller Decl. ¶ 3. Defendant SEII is a Cayman Island corporation headquartered in Dubai, U.A.E. that operates exclusively outside the United States. (Mueller Decl. ¶ 5.) From October 12, 2008, through the present time, Defendants have employed no person and conducted no business in Hawaii. Id. ¶ 6. Defendants do not own, lease, possess, or maintain any personal or real property in Hawaii, including bank accounts. Id. ¶ 7.

In order to secure employment with Defendants, job applicants must apply through a website called www.kbrjobs.com. (See Watson Decl. ¶ 3.) This website allows applicants to electronically submit their resumes to a database that is reviewed and searched by company recruiters located in Houston,

---

[2/] The facts as recited in this order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Texas.  Id. ¶ 4.  This website advertises jobs located all over the world.  Id. ¶ 3.  The site "does not specifically encourage Hawaiian residents to apply, does not suggest that Hawaiian residents will be given special consideration for employment, and does not make any other special effort to recruit Hawaiian residents."  Id.  After applicants submit an application, they "may be screened by recruiting personnel."  (See Lamance Decl. ¶ 3.)

Qualified applicants are invited to travel to Houston, Texas for pre-employment screening and orientation.  Id. Recruiters may contact qualified candidates by telephone or e-mail to provide important job information, including the location of the position which "could be anywhere across the globe." (Watson Decl. ¶ 4.)  Candidates who agree to certain employment conditions are mailed additional information about overseas employment and are given a plane ticket to Houston if they are not within reasonable driving distance.  Id. ¶ 5.  Candidates do not receive any money and are informed that they will not receive any wages unless they are hired at the conclusion of testing and orientation in Houston.  Id.

While she was living in Hawaii, Plaintiff applied for a job with Defendants through www.kbrjobs.com on three dates:  June 25, June 28, and July 2, 2008.  Id. ¶ 6; see also De Leon Decl. ¶ 5.  Plaintiff received an email response from a KBR recruiter on

-5-

July 28, 2008, and was invited to participate in a conference call to discuss mandatory information. (De Leon Decl. ¶ 6.) The following day, Plaintiff received an email from KBR attaching a Recruiting Packet, which she subsequently completed and faxed back to KBR as requested. Id. ¶ 7. Between August and September of 2008, Plaintiff corresponded via email with KBR representatives regarding subjects such as completion of an online background check, a "Workplace Attitude and Behavior Inventory Test," supplemental data requests, health benefits, Plaintiff's "processing date," and travel arrangements to Houston. Id. ¶¶ 8-14.

Plaintiff boarded a flight at the Honolulu airport on September 27, 2008, and arrived in Houston, Texas on September 28, 2008. Id. ¶ 15. Upon arrival, Plaintiff participated in KBR's orientation program, which lasted for approximately two weeks and took place in Houston, Texas. Id. ¶ 16. Subsequently, Plaintiff departed Houston to begin work in Iraq on October 12, 2008. (Watson Decl. ¶ 6.) Plaintiff worked exclusively in Iraq during her employment with Defendants. (Lamance Decl. ¶ 6.)

Beginning on October 12, 2008, Plaintiff was employed by Defendants as a Mechanical Assembler on the Logistics Civil Augmentation Program ("LOGCAP") III project, which supports the United States military in Iraq. Compl. ¶¶ 6, 20(a). Plaintiff alleges that during the course of her employment, supervisors

employed by Defendants subjected her to "disparate treatment as compared to similarly situated non-Filipino male employees." Id. ¶ 8. Specifically, Plaintiff contends that she was sexually harassed by several of her male coworkers during her employment with Defendants in Iraq, where she was one of very few females on-site. Id. ¶ 9.

Plaintiff alleges that she made complaints of sexual harassment, hostile work environment and/or retaliation based upon inappropriate comments and/or advances made by male coworkers on three separate occasions while employed by Defendants in Iraq. Id. ¶¶ 20(c), 20(f), 20(j). However, Plaintiff alleges that these complaints resulted in no corrective action taken against the male coworkers. Id. ¶¶ 10, 14, 20(k). Instead, Plaintiff contends that shortly after filing these complaints she was either transferred to another work camp or written up for work violations just days or weeks after filing her complaints. Id. ¶¶ 11, 13, 15, 20(d), 20(e), 20(g), 20(k).[3]

Shortly after Plaintiff was involuntarily transferred on or about August 16, 2010, just five days after reporting that a male coworker had harassed her, Plaintiff alleges that she was falsely accused of work violations by her new foreman and

---

[3] Although Plaintiff admits that she violated certain rules with respect to the write-ups, she contends that male co-workers who committed similar violations were not disciplined. See Compl. ¶¶ 11, 20e, 20g.

terminated on November 14, 2010.  <u>Id.</u> ¶¶ 20(l), 20(m).

Following her termination, Plaintiff discussed her discrimination claims with officials at the U.S. Equal Employment Opportunity Commission (the "EEOC"), and signed the Charge of Discrimination and retaliation (the "Charge") against Defendants on March 12, 2011.  <u>Id.</u> ¶ 17.  In the Charge, Plaintiff alleged discrimination in the terms and conditions of her employment due to her race (Filipino), sex (female), and in retaliation for complaining about discrimination and sexual harassment to her employer.  <u>Id.</u> ¶ 19.  The EEOC issued a Dismissal and Notice of Rights to Plaintiff on August 11, 2011.  <u>Id.</u> ¶ 18.


### III.  STANDARD OF REVIEW

**Motion to Dismiss for Lack of Personal Jurisdiction**

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).  It is within the Court's discretion to allow the plaintiff to submit affidavits, allow affidavits plus discovery, or to conduct an evidentiary hearing.  <u>Data Disc., Inc. v. Systems Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977). When the Court rules without

conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" through the submitted materials in order to avoid dismissal.[4/]

Schwarzenegger, 374 F.3d at 800; Data Disc., 557 F.2d at 1285. In such cases, the Court only inquires into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." Id. (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)).

"In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (quoting WNS Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir.1989)); accord Pure, Ltd. v. Shasta Bev., Inc., 691 F. Supp. 1274, 1277 (D. Haw. 1988).

## IV.  DISCUSSION

Defendants assert three central bases for dismissal in their Motion to Dismiss:  (1) there is no basis for the Court to

---

[4/] The plaintiff "must eventually establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1137 (D. Haw. 1997).

exercise general or specific personal jurisdiction over the

Defendants; (2) venue in this forum is improper; and (3)

litigation in Hawaii would result in undue inconvenience and

expense for the parties and witnesses in the action and would be

counter to the interests of justice.  (Mot. to Dismiss at 3-4.)

For the following reasons, the Court determines that it lacks

personal jurisdiction over Defendants, however it is in the

interest of justice to transfer the case to the U.S. District

Court for the Southern District of Texas.

**A.  The Court Lacks Personal Jurisdiction Over Defendants**[5/]

---

[5/] In her opposition memorandum, Plaintiff suggests that the
Court's discussion of jurisdiction may be rendered moot due to a
binding arbitration provision under the employment contract.
(See P's Opp. Mem. at 11; see also Mueller Decl., Attachment 1 ¶
26.)  The Court observes that while Plaintiff included the
Employment Agreement as an attachment to her opposition
memorandum, Plaintiff did not include the arbitration agreement.
The Employment Agreement provides: "Employee . . . agrees that
they will be bound by and accept as a condition of employment the
terms of the KBR Dispute Resolution Program which are herein
incorporated by reference.  EMPLOYEE UNDERSTANDS THAT THE DISPUTE
RESOLUTION PROGRAM REQUIRES, AS ITS LAST STEP, THAT ANY AND ALL
CLAIMS THAT EMPLOYEE MIGHT HAVE AGAINST THE COMPANY (OR ITS
OWNERS, SUBSIDIARIES, OTHER AFFILIATES, EMPLOYEES, OTHER
REPRESENTATIVES, OR CONTRACTORS) EITHER (i) RELATED TO THEIR
EMPLOYMENT, INCLUDING THE TERMINATION OF EMPLOYMENT, OR (ii) FOR
PERSONAL INJURIES ARISING IN THE WORKPLACE, BE SUBMITTED TO
BINDING ARBITRATION INSTEAD OF THE COURT SYSTEM."  (Mueller
Decl., Attachment 1, at ¶ 27.)  Neither party has adequately
addressed this issue.  Because the Court has determined that it
may not exercise personal jurisdiction over Defendants, it does
not reach this issue in this Order.  However, if the parties
believe that the arbitration provision affects Plaintiff's
ability to bring suit, the parties should address this issue
before a district court that may properly exercise personal
jurisdiction over Defendants.

Plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant. <u>Schwarzenegger</u>, 374 F.3d at 800. The Hawaii Supreme Court interprets Haw. Rev. Stat. § 634-35 as allowing jurisdiction "to the full extent permissible by the Due Process Clause of the Fourteenth Amendment." <u>Cowan v. First Ins. Co.</u>, 608 P.2d 394, 399 (Haw. 1980); accord <u>Robinson Corp. v. Auto-Owners Ins. Co.</u>, 304 F. Supp. 2d 1232, 1236 n. 7 (D. Haw. 2003) (citation omitted). Because Hawaii's long-arm statute reaches to the full extent permitted by the Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction. <u>See, e.g.</u>, <u>Schwarzenegger</u>, 374 F.3d at 800-01.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985); accord <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 269-70 (9th Cir. 1995). Due process is satisfied if the Court has "either general jurisdiction or specific jurisdiction" over the defendant. <u>Doe v. Am. Natl. Red Cross</u>, 112 F.3d 1048, 1050 (9th Cir.1997); <u>Robinson Corp. v. Auto-Owners Ins. Co.</u>, 304 F. Supp. 2d 1232, 1236 (D. Haw. 2003) (citation omitted).

## 1. General Jurisdiction

General jurisdiction exists only when the defendant's "activities in the state are 'substantial' or 'continuous and systematic.'" Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting Data Disc., 557 F.2d at 1287). Courts in the Ninth Circuit have recognized that the standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Mavrix Photo, Inc. v. Brand Techs., 647 F.3d 1218, 1224 (9th Cir. 2011) (quoting Schwarzenegger, 374 F.3d at 801). The Court of Appeals for the Ninth Circuit recently observed that the Supreme Court has only found general personal jurisdiction over a non-resident defendant in one case. See Mavrix, 647 F.3d at 1224 (discussing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952).[6]

Numerous courts have declined to extend general jurisdiction to non-resident defendants based upon contacts that

_____

[6] The Supreme Court characterized Perkins as the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S.Ct. 2846, 2856 (2011). The defendant was a Philippine corporation, however the company's president (who also served as general manager and principal stockholder) had returned to his home in Ohio, kept business files in Ohio, handled corporate correspondence from Ohio, drew employees' salaries from Ohio bank accounts, and held directors' meetings while he was in Ohio. Mavrix, 647 F.3d at 1224 (describing Perkins, 342 U.S. 437).

were far more substantial than those alleged in the instant action. For example, in <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, the Supreme Court held that a Colombian corporation was not subject to general jurisdiction in the state of Texas even though it had sent its CEO to Texas to negotiate a contract; sent pilots for training in Texas; sent management and maintenance personnel to Texas for technical consultation; spent more than $4 million to purchase approximately 80 percent of its fleet from a Texas supplier; and received more than $5 million in contract payments from funds drawn on a Texas bank. <u>Mavrix</u>, 647 F.3d at 1224 (discussing 466 U.S. 408 (1984)).[7/] Moreover, the Ninth Circuit has held that a defendant's operation of an interactive website, even one that is "highly interactive," does not confer general jurisdiction. <u>Mavrix</u>, 647 F.3d at 1224.

In her opposition memorandum, Plaintiff concedes that Defendants "are not incorporated in Hawaii and do not have continuous, systematic, and substantial contacts with Hawaii necessary to give rise to general personal jurisdiction." (<u>See</u> P's Opp. Mem. at 4.) The Court agrees. Defendants "have employed no person and conducted no business in Hawaii," nor have

---

[7/] <u>See also</u> <u>Schwarzenegger</u>, 374 F.3d at 801 (denying general jurisdiction in California over Ohio automobile dealership that regularly purchased automobiles imported by California importers via contracts that included a choice-of-law provision specifying California law; regularly retained the services of a California marketing company; hired a California corporation for consulting services; and maintained a website accessible in California).

-13-

they "owned, leased, possessed or maintained any personal or real property in Hawaii, to include bank accounts." (See Mueller Decl. ¶¶ 6-7.) Under these facts, the Court concludes that it has no basis to exercise general personal jurisdiction over Defendants in this action.

## 2. Specific Jurisdiction

Although Plaintiff concedes that the Court may not exercise general personal jurisdiction over Defendants, she argues that Defendants' contacts with Plaintiff while she was a resident of Hawaii are sufficient to establish specific personal jurisdiction. (P's Opp. Mem. at 4-5.)

Specific personal jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316; accord Burger King, 471 U.S. at 475. To determine whether specific jurisdiction exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's] contacts" with the forum state. Sher, 911 F.2d at 1361. Specifically:

> (1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to

-14-

the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play
    and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 801-02 (citing Lake v. Lake, 817 F.2d
1416, 1421 (9th Cir. 1987)).  The parties agree that the
Schwarzenegger test applies to determine specific personal
jurisdiction.  (See D's Reply at 3; P's Opp. Mem. at 10-11.)  "If
any of the three requirements is not satisfied, jurisdiction in
the forum would deprive the defendant of due process of law."
Omeluk, 52 F.3d at 270.

     The plaintiff bears the burden of satisfying the first
two requirements of the test for specific personal jurisdiction.
Schwarzenegger, 374 F.3d at 801-02 (citation omitted).  If the
plaintiff fails to satisfy either of these requirements, personal
jurisdiction is not established in the forum state.  Id.  If the
plaintiff succeeds in satisfying the first two requirements, "the
burden then shifts to the defendant to 'present a compelling
case' that the exercise of jurisdiction would not be reasonable."
Id. (quoting Burger King, 471 U.S. at 476-78).  The Court may
exercise jurisdiction "with a lesser showing of minimum contacts
than would otherwise be required if considerations of
reasonableness dictate."  Haisten v. Grass Valley Med.
Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).

     The Court observes that Defendants have advanced

-15-

substantial case law support for their assertion that Plaintiff
has failed to meet her burden in establishing specific personal
jurisdiction.  (See Mot. to Dismiss at 9-18.)  In contrast,
Plaintiff only cites one case from the District of Oregon in her
twelve-page opposition memorandum.  (See P's Opp. Mem.)  The
Court will consider each of the factors for specific personal
jurisdiction in turn.

    **(a) Purposeful Direction**

    The first part of the Schwarzenegger test is divided
into "purposeful direction," which usually applies to tort cases,
and "purposeful availment," which applies most often to contract
cases.  See Fiore v. Walden, 657 F.3d 838, 848 (9th Cir. 2011)
(discussing Schwarzenegger, 374 F.3d at 802).[8/]  In the instant
action, Plaintiff asserts claims under Title VII and pendent
state law claims sounding in tort.  Compl. at 11-15.  The Court
measures purposeful direction by the three-part "effects" test

---

    [8/] See also Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir.
2007) (quoting Yahoo! Inc. v. La Lique Contre Le Racisme Et
L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006)) ("We have
typically treated 'purposeful availment' somewhat differently in
tort and contract cases.  In tort cases, we typically inquire
whether a defendant 'purposefully directs his activities' at the
forum state, applying an 'effects' test that focuses on the forum
in which the actions were felt, whether or not the actions
themselves occurred within the forum . . . . By contrast, in
contract cases, we typically inquire whether a defendant
'purposefully avails itself of the privilege of conducting
activities' or 'consummates a transaction' in the forum, focusing
on activities such as delivering goods or executing a
contract.").

introduced by the Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).[9/]  The test is satisfied if the defendant is alleged to have: 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state.  <u>Resnick v. Rowe</u>, 283 F. Supp. 2d 1128, 1137 (D. Haw. 2003); <u>see also</u> <u>Harris Rutsky & Co. Ins. Svcs., Inc. v. Bell & Clements Ltd.</u>, 382 F.3d 1122, 1130 (9th Cir. 2003) (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

Regarding the first factor, courts in the Ninth Circuit "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." <u>Schwarzenegger</u>, 374 F.3d at 806.  To establish "express aiming," Plaintiff must demonstrate "'individual targeting' of forum residents," in other words, "actions taken outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections." <u>See</u> <u>Fiore</u>, 657 F.3d at 849 (discussing <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124,

---

[9/] <u>See also</u> <u>Roth v. Garcia-Marquez</u>, 942 F.2d 617, 621 (9th Cir 1991); <u>see also Resnick</u>, 283 F. Supp. 2d 1128, 1139 (D. Haw. 2003).

-17-

1129–31 (9th Cir. 2010)).[10/]  The "express aiming" requirement is
not met where it is merely foreseeable that there will be an
impact on individuals in the forum.  Pebble Beach, 453 F.3d at
1156; Bancroft & Masters, 223 F.3d at 1087; Schwarzenegger, 374
F.3d at 805.  Courts in this Circuit have held that simply
maintaining a passive website does not satisfy the "express
aiming" requirement, even though the website is viewed by forum
resident, because there is no "individualized targeting" involved
in "merely registering and operating a passive informational
website."  Pebble Beach, 453 F.3d at 1157.

Finally, regarding the third factor, "foreseeable
harm," this "element is satisfied when defendant's intentional
act has 'foreseeable effects' in the forum."  Brayton Purcell,
606 F.3d at 1131 (quoting Yahoo! Inc. v. La Ligue Contre Le
Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006)).
"If a jurisdictionally sufficient amount of harm is suffered in
the forum state, it does not matter that even more harm might
have been suffered in another state."  Yahoo!, 433 F.3d at 1207.

The crux of Defendants' argument is that Defendants'
employment website (www.kbrjobs.com) is "neither expressly aimed
at Hawaii, nor did any alleged harm suffered by the Plaintiff
occur in Hawaii."  (Mot. to Dismiss at 10.)  Defendants correctly

---

[10/] See also Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1157
(9th Cir. 2006); Dole Food Co., Inc. v. Watts, 303 F.3d 1104,
1111 (9th Cir. 2002); Bancroft & Masters, 223 F.3d at 1087.

assert that the Ninth Circuit has made clear that "merely running a website available for the entire world population to view does not create personal jurisdiction over a defendant in a particular venue where the website is accessed." Id. at 10-11 (citing Holland America Line, Inc. v. Wartsila North America, Inc., 485 F.3d 450, 460 (9th Cir. 2007); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)).

Plaintiff urges the court to follow the reasoning in Bixby v. KBR Inc., No. CV 09-632-PK, 2010 WL 1499455 (D. Or. Apr. 12, 2010), wherein the court exercised specific personal jurisdiction over defendants, one of which was KBR. In Bixby, plaintiffs alleged that defendants were liable for negligence and fraud arising out of plaintiffs' exposure to poisonous chemicals while stationed as Oregon National Guardsmen in Iraq and assigned to duty at a water plant at defendants' behest. Id. at *1.

Contrary to Plaintiff's contention, Bixby is distinguishable. As Defendants assert, whereas "the Bixby plaintiffs had alleged that KBR made misrepresentations to them regarding harmful chemicals with knowledge that the plaintiffs were from Oregon and that the effect of the alleged wrongful conduct would be felt in Oregon," in the instant case, "there is no evidence or even an allegation that the people who allegedly wrongfully treated Plaintiff in Iraq knew that she was from Hawaii or believed that their alleged conduct would have any

-19-

effect in Hawaii whatsoever." (D's Reply at 5-6.) The Court

agrees.[11]

Moreover, numerous courts have criticized and declined

to follow Bixby because the court mistakenly excused plaintiffs

from establishing "purposeful direction," as is required by

Supreme Court and Ninth Circuit precedent.[12] Indeed, the Bixby

---

[11] Nor has Plaintiff alleged that the KBR representatives
who interviewed and hired Plaintiff "individually targeted" her
as a Hawaii resident or anticipated the "foreseeable effects"
that the alleged sexual harassment that occurred in Iraq would
have on a Hawaii resident.

[12] See, e.g., Bailey v. DynCorp Int'l FZ-LLC, No. 3:11-CV-
00714-KI, 2012 U.S. Dist. LEXIS 4142 (D. Or. Jan. 11, 2012).
Plaintiff, who lived in Oregon, applied for an overseas job
posted on Defendant's website and communicated with Defendant via
telephone or email. Id. at *2-3. Plaintiff received a
contingent job offer as a Police Advisor in Afghanistan, and
Defendants flew Plaintiff to a training site in Virginia. Id. at
*3. At the end of training, Plaintiff signed an employment
agreement in Virginia and deployed to Afghanistan. Id.
Plaintiff alleged that her supervisors harassed her in
Afghanistan following an injury. Id. at *5. The court rejected
Bixby and declined to exercise personal jurisdiction, stating, "I
am unconvinced . . . that Bixby correctly distinguished the
actual injury from the resulting consequences." Id. at *16.
    See also Billiter v. Kellogg, Brown & Root Svcs., Inc., No.
5:09CV119, 2010 U.S. Dist. LEXIS 73474 (N.D.W.V. July 21, 2010)
and Gallaher v. KBR, Inc., No. 5:09CV69 (STAMP), 2010 U.S. Dist.
LEXIS 73437 (N.D.W.V. July 21, 2010) (companion case to
Billiter.) Both of these cases, like Bixby, involved allegations
of tortious behavior by KBR and other defendants arising out of
failure to disclose the presence of harmful chemicals at a work
site in Iraq. In both instances, the court declined to follow
Bixby, and refused to extend specific personal jurisdiction over
Defendants, noting that plaintiffs were unable to show that
defendants "expressly targeted" West Virginia. See Gallaher,
2010 U.S. Dist. LEXIS 73437 at *22; Billiter, 2010 U.S. Dist.
LEXIS 73474 at *16. Any such "targeting" was merely fortuitous,
as Defendants were targeting anyone available in that region of
                                              (continued...)

court inexplicably concluded that all three prongs of the "effects" test were met even though it announced at the outset, "I agree with defendants' argument that they did not purposefully direct their activities toward Oregon . . . ." <u>Id.</u> at *7. The Court declines to adopt the reasoning in <u>Bixby</u>.

On the other hand, Defendants cite numerous cases that support a finding that Plaintiff has failed to satisfy the "effects" test. For example, in <u>Holland America Line, Inc. v. Wartsila North America, Inc.</u>, the Court of Appeals for the Ninth Circuit concluded that defendant's passive website, which did not provide any direct means for purchasing parts or requesting services, but rather simply provided information on various products manufactured by defendants' subsidiaries, was not purposefully directed to the forum state. <u>Id.</u> at 460.[13] The court stated that "[w]e consistently have held that a mere web presence is insufficient to establish personal jurisdiction."

_____

[12] (...continued)
Iraq for assistance. <u>Id.</u>

[13] <u>See also</u> <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 419 (9th Cir. 1997) In plaintiff's action for infringement of a service mark, court refused to conclude that "cyberspace is without borders and a website which advertises a product or service is necessarily intended for use on a world wide basis." The court refused to exercise specific personal jurisdiction because the web page was not aimed intentionally at forum state knowing that harm was likely to be caused there to plaintiff. <u>Id.</u> <u>see also</u> <u>Silicon Economics, Inc. v. Financial Accounting Foundation</u>, 2010 U.S. Dist. LEXIS 130989 at *15-17 (N.D. Cal. Nov. 24, 2010).

485 F.3d 450, 460 (9th Cir. 2007).[14/]

In the instant action, Plaintiff alleges that the Court may exercise specific personal jurisdiction over Defendants based upon her use of a recruiting website that was available to any and all people located nationwide and throughout the world. See supra, Section III. Plaintiff presents no evidence that Defendants' website was directed to Hawaii residents, or that Defendants took any action with respect to hiring Plaintiff while she resided in Hawaii other than responding to her online application by means of emails and telephone calls with recruiters located in Houston, Texas. Id. Plaintiff also fails to allege that the disparate treatment she allegedly suffered at the hands of her supervisors in Iraq was purposefully directed at Hawaii, or that Defendants caused harm to Plaintiff that they knew would be felt in Hawaii. Id.

On these facts, Plaintiff has failed to establish that Defendants took an intentional action which was "expressly aimed" at Hawaii, causing harm to Plaintiff that they knew was likely to be felt in Hawaii. See Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

Courts in this Circuit have held that a plaintiff's

_____

[14/] The Court observes that the Holland court was not applying the "effects" test because the case involved breach of contract and negligence claims, rather than intentional torts. Id. The reasoning is nevertheless instructive.

-22-

failure to satisfy any of the three requirements under Schwarzenegger establishes that jurisdiction in the forum would deprive the defendant of due process of law.  See Omeluk, 52 F.3d at 270.  Nevertheless, the Court considers the other two prongs and concludes that they provide no support for the exercise of specific personal jurisdiction over Defendants in this action.

### (b)  Arising out of Forum-Related Activities

The second prong of the jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." Harris, 382 F.3d at 1129 (quoting Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir. 1993).  The Ninth Circuit uses a "but for" test to determine whether a claim arises out of forum-related activities.  See Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007) (plaintiff would not have suffered an injury "but for" defendant's forum-related conduct).  Other than encouraging the Court to follow the reasoning in Bixby, 2010 WL 1499455, Plaintiff does not support her Complaint with any allegations to establish that this action arose out of forum-related activity.  (See P's Opp., at 10-11.)

Plaintiff fails to make any allegations that Defendants engaged in activities related to Hawaii in her Complaint.  In her response to Defendants' Motion to Dismiss, Plaintiff provides a declaration detailing numerous phone calls and emails with Houston-based recruiters working for Defendants who contacted

Plaintiff in response to her online job application while she was a resident of Hawaii. (De Leon Decl., ¶¶ 6-14.) Plaintiff executed two employment contracts with Defendants; one in Houston, Texas, and one in Iraq. (P's Opp., at 9-10; <u>see also</u> Mueller Decl. Attachment 1, at 14.) The employment contracts are governed by Texas law. (Mueller Decl., Attachment 1, at 14.) Moreover, the actions giving rise to this lawsuit occurred exclusively in Iraq. Compl. ¶20(a); <u>see also</u> Lamance Decl. ¶ 6.

Defendants correctly assert that Plaintiff's claims "have nothing to do with Hawaii-based conduct; they are predicated exclusively on events occurring in Iraq." (<u>See</u> Mot. to Dismiss at 14.) The only possible nexus between Defendants' actions and Hawaii relate to the telephone and email conversations between Defendants' Houston-based recruiters and Plaintiff while she was a resident of Hawaii, which resulted from Plaintiff's decision to apply on-line at <u>www.kbrjobs.com</u>. These communications occurred <u>prior</u> to the execution of the employment agreement and the alleged incidents of disparate treatment in Iraq.

The Ninth Circuit has held that "ordinarily, 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1261-62 (9th Cir. 1985), <u>cert. denied</u>,

475 U.S. 1122 (1996) (quoting <u>Thos. P. Gonzalez Corp. v. Consejo</u> <u>Nacional de Produccion de Costa Rica</u>, 614 F.2d 1247, 1254 (9th Cir. 1980)). In the instant action, Plaintiff fails to establish that "but for" Defendants' forum-related activities, her claims relating to disparate treatment would not have arisen. The contemplated future consequences of Plaintiff's employment were that Plaintiff would travel to Houston, Texas for training and execution of the employment agreement, and would move to and be employed by Defendants exclusively in Iraq.[15]

Plaintiff has failed to provide sufficient evidence that but for Defendants' Hawaii-related activities, Plaintiff would not have suffered the injury at issue in this litigation. Moreover, to the extent that Plaintiff seeks to draw a causal connection between the Houston recruiters' emails and telephone calls with Plaintiff while she resided in Hawaii and the subsequent events that occurred in Iraq, it is simply too attenuated to support the extension of specific personal jurisdiction to Defendants.

---

[15] <u>See, e.g.</u>, <u>Houseman v. DPI Food Prods.</u>, 2005 U.S. Dist. LEXIS 24142, at *5-6 (E.D. Ky. Oct. 18, 2005). In <u>Houseman</u>, the court refused to extend personal jurisdiction over a defendant employer who offered a Kentucky resident an out-of-state job, stating "[t]he contemplated future consequences of both parties was that the plaintiff would move to and be employed by the defendant in Colorado. The terms of the contract were to be carried out in Colorado."

**(c)  Reasonableness**

If a plaintiff succeeds in satisfying both the first and second prongs of the analysis for specific personal jurisdiction, "the burden . . . shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 801-02 (quoting Burger King, 471 U.S. at 476-78). The Court has determined that Plaintiff has failed to establish either of the first two prongs. See supra, Sections V.A.2.a, V.A.2.b. Accordingly, Plaintiff has not made a prima facie case for personal jurisdiction and Defendants are not required to present a compelling case, or any case, that the exercise of jurisdiction would be unreasonable. Nevertheless, the Court further concludes that the exercise of jurisdiction over Defendants in this action would be unreasonable.

In making a reasonableness determination, the Court must consider the following factors:

(1)  The extent of the defendants' purposeful interjection into the forum state's affairs;

(2)  the burden on the defendant of defending in the forum;

(3)  the extent of conflict with the sovereignty of the defendants' state;

(4)  the forum state's interest in adjudicating the dispute;

(5)  the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

Fiore, 657 F.3d at 854. The Court balances all seven factors, recognizing that none of the factors is dispositive in itself. Id.

### (i) *Purposeful Interjection*

"The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Core-Vent, 11 F.3d at 1488 (citation omitted). Here, Defendants have not interjected themselves into Hawaii by utilizing a website that was available to job applicants all over the country and abroad, nor did Defendants interject themselves into Hawaii by virtue of emails and phone calls with Plaintiff that ultimately culminated in the signing of an employment contract, and job training, in Houston. See generally supra Section V.A.2. For the same reasons, Defendants did not interject themselves into Hawaii by employing Plaintiff in Iraq, the location of all of the operative facts at issue in this litigation. Id. Defendants also have no business presence whatsoever in Hawaii. (Mueller Decl. ¶¶ 6-7.) For these reasons, this factor heavily favors Defendants.

### (ii) *Burden on Defendant*

The Court recognizes that "a defendant's burden in

litigating in the forum is a factor in the assessment of
reasonableness, but unless the 'inconvenience is so great as to
constitute a deprivation of due process, it will not overcome
clear justifications for the exercise of jurisdiction.'"
Panavision Int'l v. Toeppen, 141 F.3d 1316, 1321, 1323 (9th Cir.
1998)(internal citations omitted). Moreover, courts in this
Circuit have observed that "[r]ecent advancements in
communication and transportation ... have greatly reduced the
inconvenience once associated with defending in another forum."
Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232,
1240 (D. Haw. 2003) (citing Panavision, 141 F.3d at 1323).
Defendants have no offices, employees, or real or personal
property in Hawaii, and are located and represented by counsel in
Houston, Texas.   (Mueller Decl. ¶ 6.)  Accordingly, litigating
this matter in Hawaii imposes a burden on Defendants.  The Court
concludes that this factor slightly favors Defendants.

*(iii) Conflict with Texas Sovereignty*

There is no evidence presented to demonstrate a
conflict with the sovereignty of Texas, Defendant KBR's place of
residence. (Mueller Decl. ¶ 3.)   Moreover, the sovereignty of a
defendant's state is not a significant consideration in actions
between citizens of the United States. See Decker Coal Co. v.
Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir. 1986).  The
Court concludes that this factor is neutral.

(iv)  _Interests of Hawaii_

"Hawaii has a 'strong interest in providing an effective means of redress for its residents who are tortiously injured.'"  WeR1 World Network v. CyberLynk Network Inc., Civ. No. 11-00195 DAE-RLP, 2011 WL 4412181, at *7 (D. Haw. Sept. 20, 2011) (citing Resnick, 283 F. Supp. 2d at 1141).  Nevertheless, as Defendants assert, this interest may be somewhat diluted in light of the fact that Plaintiff's pre-employment testing occurred in Houston and the incidents giving rise to this action occurred exclusively in Iraq.  The Court concludes that this factor slightly favors Plaintiff.

(v)  _Efficiency_

"[C]onsideration of the most efficient judicial resolution is 'no longer weighted heavily given the modern advances in communication and transportation.'"  Panavision, 141 F.3d at 1323 (citing Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995)).  Defendants do not offer much support with respect to this factor.  They state that their principal place of business is in Houston, Texas, as is their counsel.  (Mueller Decl. ¶ 6.)  Moreover, they assert that "[t]o the extent that any witnesses remain in Iraq, it is far easier and less expensive to provide for their travel to Houston, Texas rather than Hawaii."  (See Mot. to Dismiss at 3 (citing Lamance Decl. ¶ 5).)  The Court concludes that this factor slightly

favors Defendants.

   *(vi)*  *Importance of the Forum to Plaintiff's Interest*
          *in Convenient and Effective Relief*

"[I]n evaluating the convenience and effectiveness of
relief for the plaintiff, the Ninth Circuit has given little
weight to the plaintiff's inconvenience." WeRl, 2011 WL 4412181,
at *7 (quoting Panavision, 141 F.3d at 1324 (internal citations
omitted)).  Thus, although it may be more costly and inconvenient
for Plaintiff to litigate this action in another forum, this
factor weighs only slightly in favor of Plaintiff.

   *(vii) Existence of Alternative Forum*

   The Court concludes that an adequate alternative forum
exists.  The claims against Defendants could have been brought in
the Southern District of Texas, where Defendant KBR resides.  See
28 U.S.C. § 1391; see also infra Section V.C.  Plaintiff bears
the burden of proving the unavailability of an alternate forum.
Core-Vent Corp., 11 F.3d at 1490 (citing Pacific Atlantic Trading
Co. v. M/V Main Exp., 758 F.2d 1325, 1331 (9th Cir. 1985)).
Plaintiff has not satisfied this burden of proving that there is
no available alternate forum.  This factor weighs heavily in
favor of Defendants.

   On balance, the Court concludes that Defendants have
presented a compelling case that the Court's exercise of
jurisdiction over Defendants would be unreasonable. "The smaller
the element of purposeful interjection, the less is jurisdiction

to be anticipated and the less reasonable is its exercise." Core-Vent, 11 F.3d at 1488 (citation omitted).

The Court has already determined that Plaintiff has failed to meet her burden in establishing a prima facie case for the exercise of specific personal jurisdiction, thereby obviating Defendant's need to present a case for reasonableness at all. Nevertheless, the Court concludes that the exercise of jurisdiction over Defendants would not comport with fair play and substantial justice and would thus be unreasonable. Thus, the only matter left for the Court to consider is whether to dismiss the present action or transfer it to another court. See Ukai v. Fleurvil, Civ. No. 06-00237 JMS-KSC, 2006 WL 3246615, at *3 (D. Haw. Nov. 7, 2006).

## B. The Court Transfers Venue to the United States District Court for the Southern District of Texas

The Court determines that it is in the interest of justice to transfer venue from the District of Hawaii to the Southern District of Texas under 28 U.S.C. § 1406(a). The Court first concludes that venue is improper in the District of Hawaii. Accordingly, 28 U.S.C. § 1406(a), rather than 28 U.S.C. § 1404(a), applies. Second, the Court determines that it is in the interest of justice to transfer rather than dismiss the action.

**1. The Court Transfers Venue Under 28 U.S.C. § 1406(a) Because Venue in Hawaii is Improper**

The Court must decide whether 28 U.S.C. § 1404(a)[16/] (the forum convenience transfer statute) or 28 U.S.C. § 1406(a)[17/] (the improper venue statute) applies. The Supreme Court has stated that "[a]lthough both sections were broadly designed to allow transfer instead of dismissal, [§] 1406(a) provides for transfer from forums in which <u>venue is wrongly or improperly laid</u>, whereas, in contrast, [§] 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 634 (1964).[18/] The Court determines that venue in Hawaii is improper and thus exercises its venue transfer power pursuant to § 1406(a).

The Court need not have personal jurisdiction over Defendants to transfer an action under Section 1406(a). <u>Kawamoto</u>

---

[16/] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[17/] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[18/] The Supreme Court explained, "[t]his distinction underlines the fact that Congress, in passing [§] 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." <u>Id.</u>

v. CB Richard Ellis, Inc., 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002) (citing Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962)).

The general venue statute, 28 U.S.C. § 1391, states in relevant part that a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Court concludes that venue in the District of Hawaii is improper. Neither of the Defendants resides in Hawaii, where the U.S. District Court for the District of Hawaii is located. See Compl. ¶¶ 2,3; see also 28 U.S.C. § 1391(b)(1). Moreover, "a substantial part of the events or omissions giving rise to the claim" did not occur in Hawaii. 28 U.S.C. § 1391(b)(2). In fact, all of the facts giving rise to this action occurred while Plaintiff was employed in Iraq. (See Lamance Decl. ¶ 6.) Additionally, the employment contract between Defendants and Plaintiffs was signed in Houston, Texas, and is governed by Texas law. (Mueller Decl. Attachment 1, at 14.) Finally, the Court has already determined that Defendants are not subject to the

-33-

Court's personal jurisdiction with respect to this action.  See
28 U.S.C. § 1391(b)(3); see also supra Section V.A.2.  For these
reasons, the Court concludes that the U.S. District Court for the
District of Hawaii is an improper venue.

### 2.  It is in the Interest of Justice to Transfer Rather Than Dismiss the Present Action

"The plain statutory language of 28 U.S.C. § 1406(a)
instructs the [C]ourt to determine whether the 'interest of
justice' requires a transfer rather than a dismissal of the
present action."  Ukai, 2006 WL 3246615, at *4.  Plaintiff would
be time-barred from initiating a new action if the Court
dismissed, rather than transferred, the case.  See, e.g.,
Minnette v. Time Warner, 997 F.2d 1023, 1026-27 (2d Cir. 1993).
A Title VII action must be brought within 90 days of receipt of
an EEOC right-to-sue letter.  See 42 U.S.C. § 2000e-5(f)(1)
(198).  Here, Plaintiff received her letter from EEOC on August
11, 2011.  Compl. ¶ 18.  The 90-day filing deadline has long
passed.  "In instances where a complaint is timely filed and
later dismissed, the timely filing of the complaint does not
'toll' or suspend the 90-day limitations period."  Minnette, 997
F.2d at 1027.  Accordingly, were the Court to dismiss the
action, Plaintiff would be barred by the statute of limitations
from pursuing her Title VII claims against Defendants.

The Supreme Court has stated that Section 1406(a) was
enacted to avoid "the injustice which had often resulted to

-34-

plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." Goldlawr, 369 U.S. at 466. The Supreme Court also observed that "[n]umerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitations, 'the interest of justice' requires that the cause be transferred." Burnett v. New York Cent. R. Co., 380 U.S. 424, 430 n.7 (1965). Indeed, "[b]oth federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run. In both federal and state systems of justice rules have been devised to prevent this from happening . . . [such as] 28 U.S.C. § 1406(a)." Id. at 430.

Where, as here, "dismissal would bar redress and procedural errors would act as justice-defeating mechanisms rather than rules to promote the expeditious adjudication of claims on their merits, the preferred disposition is to transfer the action." Ukai, 2006 WL 3246615, at *4 (citing Burnett, 380 U.S. at 430). Courts have held that dismissal may be appropriate, even if it were to forever bar plaintiff from obtaining relief, where the court finds that the plaintiff has

acted in bad faith, engaged in forum shopping, or harassed the defendants, or where transfer would be futile. <u>Ukai</u>, 2006 WL 3246615, at *4.[19/]  The Court does not find sufficient evidence to conclude that dismissal is appropriate based upon any of these factors.

The Court concludes that the most efficient and just result is to exercise its discretion pursuant to Section 1406(a) and transfer the action.  The final question is whether the Southern District of Texas is a proper transferee forum.

### 3.  The United States District Court for the Southern District of Texas Meets the Procedural Prerequisites as Transferee Court

Pursuant to 28 U.S.C. § 1406(a), the Court may transfer this action only to a transferee court in which it "could have been brought" originally.  <u>See</u> 28 U.S.C. § 1406(a).  Accordingly, (1) the transferee court must have proper subject matter jurisdiction; (2) the transferee court must be a proper venue; and (3) the defendants must be amenable to service of process in that district and must be subject to personal jurisdiction. <u>Ukai</u>, §2006 WL 3246615, at *5.

The Court concludes that transfer to the United States District Court for the Southern District of Texas is procedurally

_____

[19/] Citing <u>King v. Russell</u>, 963 F.2d 1301, 1304 (9th Cir. 1992); <u>Wood v. Santa Barbara Chamber of Commerce</u>, 705 F.2d 1515, 1523 (9th Cir. 1983); <u>Dela Cruz v. Grandinette</u>, No. 06-00184 JMS-KSC, 2006 WL 939008, at *2 (D. Haw. Apr. 6, 2006); <u>Froelich v. Petrelli</u>, 472 F. Supp. 756, 763 (D. Haw. 1979).

proper. First, the transferee court has federal question jurisdiction under 28 U.S.C. § 1331 based upon Plaintiff's Title VII claim. Compl. ¶ 4. Second, as Defendants assert, venue would be proper under 28 U.S.C. § 1391 because Defendant KBR is headquartered in Houston, Texas, and has a substantial presence in that location. (Mot. to Dismiss at 21.) Third, the transferee court has personal jurisdiction over Defendants because KBR is headquartered in Houston, Texas, and has a substantial presence in that location, and SEII, as its subsidiary, has sufficient ties to the district to exercise personal jurisdiction considering its recruiting efforts therein. Id. Finally, the parties do not dispute that the U.S. District Court for the Southern District of Texas would be a proper venue for this action. (See Mot. to Dismiss, at 20-23; P's Opp. Mem. at 11.) Accordingly, the Court concludes that transfer to the U.S. District Court for the Southern District of Texas is proper.

## V. CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Defendants' Motion to Dismiss based upon lack of personal jurisdiction; (2) DENIES Defendants' alternative Motion to Dismiss based upon improper venue; and (3) TRANSFERS this matter to the U.S. District Court for the Southern District of Texas, Houston Division. The Clerk of Court is directed to CLOSE the case file in this District.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 8, 2012.



_____
Alan C. Kay
Sr. United States District Judge

De Leon v. KBR, Inc., et al., Civ. No. 11-00685 ACK-BMK; Order Denying
Defendants' Motion To Dismiss And Transferring The Case To The United States
District Court For The Southern District Of Texas, Houston Division.